UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN MEJIA DALMAU,

               Plaintiff,

  -against-

1084 NY AVE LLC, IRIS HOLDINGS GROUP
NY LLC, LIBERTY PLACE PROPERTY
MANAGEMENT LLC, MARC
BLUMENFRUCHT, AND SHAY HART (A.K.A.
SHAYA HIRTZ),

               Defendants.

**Civil Action No:** 21-CV-4407

**COMPLAINT and DEMAND
FOR A TRIAL BY JURY**

Plaintiff, by his attorneys, Bronx Legal Services, complaining of the Defendants herein, respectfully alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff, Juan Mejia Dalmau, brings this action to recover unpaid wages and overtime for work he performed as a building superintendent for Defendants from December 2012 through September 12, 2019, and to remedy unlawful race and disability discrimination by Defendants.

2.     Plaintiff seeks unpaid overtime wages, unpaid straight time wages, liquidated damages, interest, and attorney's fees for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq., the New York Labor Law ("NYLL"), §§ 650 et. seq., and the New York Building Service Industry Wage Order, 12 N.Y.C.R.R. §141.

3.      Plaintiff further seeks backpay, emotional distress damages, punitive damages, interest, and attorney's fees for Defendants' violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. §§ 8-101 et. seq.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because Defendants maintain a principal place of business in this judicial district.

## PARTIES

6.      Plaintiff Juan Mejia Dalmau currently resides at 435 W. Main St., Apt. 1, Pen Argyl, PA 18072. For all but the first several months of his employment with Defendants, Plaintiff lived and worked at 1084 New York Avenue, apartment A11, Brooklyn, NY 11203. After his firing on September 12, 2019, Mr. Mejia continued to reside at 1084 New York Avenue until January 7, 2021.

7.      Upon information and belief, Defendant 1084 NY Ave LLC is the owner of 1084 New York Avenue. The principal place of business of Defendant 1084 NY Ave LLC is 459 Columbus Avenue, suite 700, New York, NY 10024. 1084 NY Ave LLC became Plaintiff's employer upon its acquisition of 1084 New York Avenue on January 30, 2018. 1084 NY Ave LLC was and continues to be an enterprise engaged in commerce within the meaning of the FLSA.

8.      Defendant Iris Holdings Group NY LLC ("IHG") managed 1084 New York Ave during Mr. Mejia's employment. IHG has a principal place of business located at 276 Fifth Avenue, Suite 704-4444, New York, NY 10001. IHG became Plaintiff's employer upon the acquisition of 1084 New York Avenue by Defendant 1084 New York Ave LLC in 2018. IHG was and continues to be "an enterprise engaged in commerce" within the meaning of the FLSA.

9.      Upon information and belief, Defendant Shay Hart (a.k.a. Shaya Hirtz), is a managing member of Defendants IHG and 1084 New York Ave LLC. Mr. Hart has a principal place of business at 276 Fifth Avenue, Suite 704-4444, New York, NY 10001. Mr. Hart is further registered with the New York Department of Housing Preservation and Development as the Chief Officer and Managing Agent of 1084 New York Avenue. Mr. Hart became Plaintiff's employer upon his acquisition of the building on January 30, 2018.

10.      Upon information and belief, Defendant Marc Blumenfrucht, is a managing member of IHG. Mr. Blumenfrucht has a principal place of business at 276 Fifth Avenue, Suite 704-4444, New York, NY 10001. Mr. Blumenfrucht became Plaintiff's employer upon his acquisition of the building on January 30, 2018.

11.      Upon information and belief, Defendant Liberty Place Property Management LLC ("Liberty Management") managed 1084 New York Avenue before the building's purchase by 1084 NY Ave LLC. Liberty Management has a principal place of business at 1841 Broadway 941, New York, NY 10023. Liberty Management employed Plaintiff from his hiring in December 2012 until the sale of the building in January 2018.

## STATUTORY FRAMEWORK

### Fair Labor Standards Act

12.     The FLSA requires covered employers to pay their employers one and a half times their regular rate for their hours worked beyond 40 hours per week. 29 U.S.C. § 207(a).

13.      An employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d). Covered employers under the FLSA are those who engage in related activities in commerce for a common business purpose and who have a gross volume of business which is not less than $500,000 per year. 29 U.S.C. § 203(s)(1)(A)(ii).

14.     An employee under the FLSA is any individual employed by a covered employer. 29 U.S.C. § 203(e)(1).

15.     An employee's regular rate is the hourly rate paid for all non-overtime hours worked in a workweek. 29 C.F.R. § 778.108. Where lodging is furnished to an employee in addition to a cash wage, the reasonable cost of the lodging facilities to the employer must be considered part of the employee's regular rate of pay. 29 C.F.R. § 531.37(b)

16.     The reasonable cost of lodging when furnished to an employee is not more than the actual cost to the employer of such lodging and does not include any profit to the employer. 29 C.F.R. § 531.3(a)-(b). Absent an independent determination from the United States Department of Labor Wage and Hour Division Administrator, reasonable cost is the lesser of fair rental value and the cost of operation and maintenance, plus an allowance for asset depreciation. 29 C.F.R. § 531.3(c).

17.     Covered employers must make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours, and other conditions and practices of employment. 29 U.S.C. §§ 211(c), 215(a).

18.     Where an employer's violations of the FLSA are willful and intentional and where the employer has not made a good faith effort to comply with the FLSA, the employee will be entitled to recover his unpaid overtime wages and an equal amount in liquidated damages, prejudgment interest as well as reasonable attorney's fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

**New York Labor Law**

19.     Any individual, limited liability company, corporation or organized group acting as an employer in New York is a covered employer under NYLL. N.Y. Lab. Law § 651(6).

20.     NYLL requirements apply to all employees, defined as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. Law § 651(5).

21.     NYLL § 663 provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

22.     Under the New York State Building Service Industry Wage Order, an employer must generally pay an employee an overtime wage of one and one-half times the employee's regular rate of pay. 12 N.Y.C.R.R. §141-1.4.

23.     NYLL mandates that an employee is entitled to recover the full sum of wages owed, not just the statutory minimum wage for hours worked. N.Y. Lab. Law § 198(3).

24.     NYLL §198(1-a) provides that an underpaid employee is entitled to recover in a civil action the total amount of the underpayment, costs, attorney's fees, and prejudgment interest, plus, if the underpayment was willful, additional liquidated damages equal to one hundred percent of the total underpayments due.

25.     NYLL §195(3) provides that every employer shall furnish each employee with a statement with every payment of wages which must include, for all employees who are not exempt from overtime, the regular hourly rates or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the numbed of overtime hours worked.

26.     NYLL §195(4) provides that every employer shall maintain and preserve contemporaneous and accurate records of hours worked each week, and for all employees who are not exempt from overtime compensation, the payroll records shall include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of hours worked, and the number of overtime hours worked.

27.     NYLL §198(1-d) provides that for violations of NYLL § 195(3), an underpaid employee is entitled to recover damages of $250 for each workday that the violations occurred or continued to occur, up to a maximum total of $5,000, plus costs, reasonable attorney's fees, and any other relief that the Court in its discretion deems appropriate.

### New York City Human Rights Law

28.     The NYCHRL covers employers in New York City with four or more employees. N.Y.C. Admin. § 8-102.

29.     The NYCHRL forbids an employer from discriminating against an employee in compensation, or in terms, conditions, or privileges of employment on the basis of: age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, and uniformed service or immigration or citizenship status. N.Y.C. Admin § 8-107(1).

30.     The NYCHRL defines disability as any physical, medical, mental or psychological impairment, or a history or record of such impairment. A physical disability includes an impairment of any system of the body; including, but not limited to, the neurological system; the musculoskeletal system; the special sense organs, and respiratory organs. N.Y.C. Admin. § 8-102.

31.     The NYCHRL defines a "reasonable accommodation" as an accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business. The covered entity has the burden of proving undue hardship. N.Y.C. Admin. § 8-102.

32.     The NYCHRL requires employers to make a reasonable accommodation for an employee with a disability so that they may fulfill the essential requisites of a job.  N.Y.C. Admin. § 8-107(15).

33.     The NYCHRL requires an employer to engage in a good faith cooperative dialogue with an employee who has requested an accommodation or who the employer has notice may require an accommodation. N.Y.C. Admin. § 8-107(28).

34.     The NYCHRL provides for compensatory damages, costs and attorney's fees, and punitive damages where an employer acts with malice. N.Y.C. Admin § 8-502.

## FACTS

### Defendants' Business

35.     Upon information and belief, Defendants collect over $500,000 in revenue per year from tenants at the 1084 New York Avenue.

36.     The Department of Housing and Urban Development ("HUD") determines the Fair Market Rent ("FMR") in jurisdictions across the United States. The FMR is defined as the 40th percentile rent paid in a given area. 24 C.F.R. § 888.113.

37.     In 2012, the year of Plaintiff's hiring, the FMR at 1084 New York Avenue ("FMR") was: $1,183 for a studio, $1,280 for a one-bedroom, $1,424 for a two bedroom, and $1,752 for a three bedroom, and $1,970 for a four-bedroom.

38.     1084 New York Avenue is a four story, sixty-three unit building complex. Though the apartments at the premises vary in size, if Defendants collect at least the 2012 FMR for a studio for each apartment in the building, Defendants collect at least $74,529 per month, which amounts to at least $894,348 in estimated rent revenue each year. Upon information and belief, Defendants own other residential buildings in New York City which draw additional revenue.

### Mr. Mejia's Duties and Worksites

39.     Plaintiff worked for Defendants as a superintendent from December 2012 until September 12, 2019, when Defendants terminated his employment. From August 2018 until his termination, Mr. Mejia simultaneously held the position of porter.

40.     As building superintendent, Plaintiff was responsible for the maintenance of his assigned building. Plaintiffs' duties included completing plumbing assignments, carrying out construction tasks such as repairing doors and windows, fixing or installing appliances, and

painting apartment units. Plaintiff additionally maintained building boiler and heating systems. When necessary, Plaintiff provided access for third party contractors to carry out especially complex repair work.

41.     As a porter, Plaintiff took on additional responsibilities for Defendants. The porter responsibilities included handling building trash and recycling removal, as well as cleaning building common areas and the sidewalk adjacent to the premises.

42.     Defendant Liberty Management hired Mr. Mejia in December 2012 to work at two residential buildings located at 2304 Amsterdam Avenue, New York, NY 10033 and 176 St. Nicholas Avenue, New York, NY 10026.

43.     In or around May 2013, Defendant Liberty Management transferred Plaintiff to 1084 New York Avenue, where he continued to live and work until the termination of his employment.

44.     On January 30, 2018, Defendants Hart and 1084 New York Ave LLC purchased the premises, becoming Mr. Mejia's employers. Defendants Hart and Blumenfrucht managed the building through Defendant IHG, which also employed Mr. Mejia.

**Mr. Mejia's Pay and Work Hours**

45.     Defendants scheduled Mr. Mejia to work Monday to Friday from 8 AM to 5 PM. Defendants initially paid Mr. Mejia at a flat rate of $923.08 on a biweekly basis.  Defendants did not request time records from Mr. Mejia and provided paystubs without any indication of hours worked.

46.     Defendants provided Plaintiff with an apartment at 1084 New York Avenue as part of Plaintiff's compensation package.

47.     Mr. Mejia worked substantially longer hours for Defendants than his scheduled hours. From his hiring in 2012 until August 2018, Mr. Mejia regularly worked no less than 70 hours each week. Mr. Mejia worked seven days nearly every week, and often worked from 8 AM until 6 PM. Upon information and belief, Defendants had notice of Mr. Mejia's true working hours and permitted him to work such hours.

48.     Throughout his employment with Defendants, Mr. Mejia complained regularly to Defendants about their failure to pay overtime and the insufficiency of his compensation.

49.     Defendants responded to Mr. Mejia's complaints by providing him with several raises. In or around May 2015, Mr. Mejia spoke with Ms. Rosario Ruiz, then the managing agent for Defendant Liberty Management. Ms. Ruiz agreed to give Mr. Mejia a raise first to $13 per hour, increasing to $14 per hour on or around August 1, 2015. Defendants also began to provide Mr. Mejia with paystubs reflecting an hourly rate. However, Defendants did not collect time records from Mr. Mejia, instead listing 80 hours worked on his bi-weekly paystubs without regard to Mr. Mejia's actual hours worked.

50.     Defendant Liberty Management acknowledged Mr. Mejia was entitled to overtime, and in fact paid him overtime compensation for a brief period in his employment. In or around 2017, Mr. Mejia raised the issue of overtime compensation with Ms. Ruiz. Ms. Ruiz promised to pay Mr. Mejia overtime, and throughout 2017 Defendant Liberty Management paid Mr. Mejia around $1,638 in overtime.

51.     Defendants IHG, 1084 NY Ave LLC, Mr. Hart, and Mr. Blumenfrucht discontinued Defendant Liberty Management's practice of paying Plaintiff a small portion of overtime compensation. Shortly after the sale of 1084 New York Avenue to 1084 NY Ave LLC,

Plaintiff discussed this problem with Mr. Hart. Mr. Hart told Mr. Mejia that if he disliked the decision, he could quit his position as superintendent.

52.     In or around March 2018, Mr. Mejia asked Defendants Hart and Blumenfrucht for an additional raise. Mr. Blumenfrucht orally promised Mr. Mejia a raise to $18. However, Defendants continued to pay Mr. Mejia at an $14 hourly rate.

53.     In or around August 2018, the porter working at 1084 New York Avenue, Mr. Emilio Manuel Jimenez Cruz, resigned from his position.

54.     In a conversation with Mr. Mejia, Defendant Hart asked Mr. Mejia to assume the porter's responsibilities in addition to his duties as superintendent on a temporary basis. Mr. Mejia accepted this proposal.

55.     Mr. Mejia contacted Mr. Hart in or around October 2018 to discuss the hiring of a new porter. Mr. Hart told Mr. Mejia he had not found a new porter and offered Plaintiff the porter's salary of $13 per hour if he continued carrying out the porter's duties. Mr. Mejia again accepted this proposal.

56.     With the addition of the porter's salary, Defendants had promised Mr. Mejia a total of $31 per hour starting in or around October 1, 2018. However, Defendants never paid Mr. Mejia at a rate of more than $14 per hour.

57.     After assuming the porter duties in August 2018, Mr. Mejia began to work even longer hours for Defendants. During this period, Mr. Mejia worked not less than 98 hours each week. Mr. Mejia started work at 6 AM each day, and regularly did not finish working until 10 PM. Mr. Mejia worked 7 days per week in this period.  Upon information and belief, Defendants had notice of Mr. Mejia's true working hours and permitted him to work such hours.

**Overtime Owed to Plaintiff**

58.     Mr. Mejia's regular rate of pay included the reasonable cost of his apartment at 1084 New York Avenue. The hourly cash value of the apartment is rendered below as the monthly FMR divided by 4.3 (the average number of weeks in a month), further divided by 40 (regular hours worked each week).

59.     According to HUD, the FMR for the zip code 11203 (the zip code for 1084 New York Avenue) was $1249 for a one bedroom in fiscal year 2015, $1357 in fiscal year 2016, $1419 for fiscal year 2017, $1558 in fiscal year 2018, and $1599 in fiscal year 2019. *See* https://www.rentdata.org/lookup (last accessed May 6, 2021).

60.     Plaintiff's regular rate between August 1, 2015 and December 31, 2015 was $14 per hour in cash and the hourly value of his lodgings was $7.26. In this period his overtime rate was $31.89.

61.     In this period, August 1, 2015 through December 31, 2015, Plaintiff worked not less than 70 hours each week, working approximately 630 overtime hours. For this work Defendants owe Plaintiff not less than $20,092.24 in unpaid overtime.

62.     Plaintiff's regular rate between January 1, 2016 and December 31, 2016 was $14 per hour in cash and the hourly value of his lodgings was $7.88. In this period his overtime rate was $32.83.

63.      Between January 1, 2016 through December 31, 2016, Plaintiff worked not less than 70 hours each week, working approximately 1560 overtime hours. For this work Defendants owe Plaintiff not less than $51,221.51 in unpaid overtime.

64.     Plaintiff's regular rate between January 1, 2017 and December 31, 2017 was $14 per hour in cash and the hourly value of his lodgings was $8.25. His overtime rate was $33.38.

65.     Between January 1, 2017 and December 31, 2017, Plaintiff worked not less than 70 hours each week, working approximately 1560 overtime hours. Defendants paid Plaintiff $1,638 in overtime. For this period Defendants owe Plaintiff not less than $50,427 in unpaid overtime.

66.     Plaintiff's regular rate between January 1, 2018 and February 28, 2018 was $14 per hour in cash and the hourly value of his lodgings was $9.06. His overtime rate was $ 34.59.

67.     Between January 1, 2018 and February 28, 2018, Plaintiff worked not less than 70 hours each week, working approximately 240 overtime hours. For this work Defendants owe Plaintiff not less than $8300.93 in unpaid overtime.

68.     Plaintiff's regular rate between March 1, 2018 and August 10, 2018 was a promised $18 per hour in cash and the hourly value of his lodgings was $9.06. His overtime rate was $40.59.

69.     Between March 1, 2018 and August 10, 2018, plaintiff worked not less than 70 hours each week, working approximately 690 hours of overtime. For this work Defendants owe Plaintiff not less than $28,005. Defendants also owe Plaintiff the value of the promised $4 raise, from $14 to $18, for non-overtime hours worked, amounting to $3,680 in unpaid straight time in this period.

70.     Between August 10, 2018 and October 1, 2018, Plaintiff worked not less than 98 hours each week, working approximately 406 hours overtime hours. For this work, Defendants owe Plaintiff not less than $16,478.41. Defendants also owe Plaintiff the value of the promised $4 raise, from $14 to $18, for non-overtime hours worked, amounting to $1,120 in unpaid straight time in this period

71.     Plaintiff's regular rate from October 1, 2018 to December 31, 2018 was a promised $31 per hour in cash, and the hourly value of his lodgings was $9.06. His overtime rate was $60.09.

72.     Between October 1, 2018 to December 31, 2018, Plaintiff worked not less than 98 hours each week, working approximately 754 overtime hours. Defendants thus owe Plaintiff not less than $45,305.76 for this period in overtime. Defendants also owe Plaintiff the value of the promised $4 raise and porter's salary of $13 for non-overtime hours worked, amounting to not less than $8,840 in unpaid straight time in this period.

73.     Plaintiff's Regular rate from January 1, 2019 to July 22, 2019 was a promised $31 per hour wage, and the hourly value of his lodgings was $9.30. His overtime rate was $60.30.

74.     During this period, Plaintiff worked not less than 98 hours each week, working approximately 1674 overtime hours. Defendants thus owe Plaintiff not less than $98,162.30 in overtime for this period. Defendants also owe Plaintiff the value of the promised $4 raise and porter's salary of $13 for non-overtime hours worked, amounting to not less than $19,040 in unpaid straight time.

75.     Defendants owe Plaintiff not less than $335,131 in unpaid overtime and $32,680 in unpaid straight time.

### Defendants' Racially Discriminatory Harassment

76.     Mr. Mejia is a Black man.

77.     In a conversation in or around the summer of 2018, Defendant Hart, who is white, used a racial slur towards Plaintiff. The incident occurred after Mr. Mejia asked Mr. Hart for a raise. Mr. Hart replied to Plaintiff "[n-word] can make a lot of money," expressing skepticism that Plaintiff deserved such a raise because of his race.

78.     Mr. Hart made similarly discriminatory remarks in or around July 2019. In a conversation with Plaintiff, Defendant Hart complained about the alleged messiness of the building's common areas and exterior. Mr. Hart stated to Mr. Mejia "You people are animals," which Mr. Mejia reasonably understood to mean Mr. Hart believed Plaintiff and the building's Black tenants were messier than tenants of other races.

79.     These comments deeply offended Plaintiff and materially altered the terms and conditions of his employment.

### Plaintiff's Injury and Termination

80.     On July 22, 2019, Plaintiff suffered a serious injury at work. While standing on a stepladder to retrieve lightbulbs in the Premises basement, Plaintiff fell and sustained injury to his back, left shoulder, both ankles, and his right knee.

81.     Plaintiff's fall rendered him temporarily unable to work. Plaintiff informed Defendants of his injury. Plaintiff and Mr. Hart agreed to discuss Plaintiff's return to work after Plaintiff attended a medical appointment on August 22, 2019.

82.      Plaintiff learned at his medical appointment that he would need surgery on his shoulder and on one ankle, and that he thus could not expect to return to work for several months. Plaintiff informed Mr. Hart of his prognosis at a meeting shortly after the appointment. After hearing Plaintiff could not return to work quickly, Mr. Hart refused to look at Plaintiff's medical documentation and left the meeting abruptly.

83.     Defendants fired Plaintiff on September 12, 2019. Defendants sent a termination letter explaining the decision to plaintiff, citing Plaintiff's inability to complete his duties because of his injury as the reason for the firing.

84.     Defendants refused to engage Plaintiff in a good faith cooperative dialogue regarding the availability of a reasonable accommodation, though Defendants knew of Plaintiff's need for such an accommodation.

85.     Plaintiff could have fulfilled the essential requisites of his position had Defendants offered him a reasonable accommodation, such as a leave of absence or a modification of his job duties.

86.     Plaintiff's termination caused him serious emotional distress. Losing his job meant both a loss of steady income and the loss of the apartment Plaintiff had called home since 2013. Plaintiff further had to navigate these uncertainties while recovering from his injuries and serving as the primary caregiver for two dependent children.

## FIRST CLAIM FOR RELIEF

### Unpaid Overtime in Violation of the Fair Labor Standards Act

87.     Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

88.     Upon information and belief, at all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(A)(ii). Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000 per year.

89.     Plaintiff is a covered individual within the meaning of the FLSA. 29 U.S.C. § 207(a). Until he was terminated in September 2019, Defendants employed Plaintiff within the meaning of the FLSA at all relevant times. 29 U.S.C. §203.

90.     Defendant failed to pay Plaintiff one-and-one-half times his regular wage for all hours worked over forty in one week, in violation of the FLSA. 29 U.S.C. §207(a)(1).

91.     Defendants' violation of the FLSA was willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation, when they knew or should have known such an effort was due and that their failure would financially injure Plaintiff. Plaintiff is entitled to recover from Defendants, jointly and severally, amounts to be determined at trial for his unpaid overtime, an equal amount as liquidated damages, reasonable attorney's fees and the costs of the action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

### Unpaid Overtime in Violation of New York Labor Law

92.     Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

93.     12 N.Y.C.R.R. §141-1.4 requires employers to pay employees for overtime at a wage rate of one and one half-times the employee's regular rate.

94.     New York Labor Law §663 provides that "[i]f any employee is paid by his or her employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

95.     At all relevant times to this action, Defendants failed to pay Plaintiff one-and-one-half times his regular hourly rate for all hours worked in excess of forty per work week, in violation of the New York Labor Law and the New York Building Service Industry Wage Order.

96.     Defendants' failure to pay wages and overtime compensation to Plaintiffs for work performed after the first forty hours worked in a week was willful.

97.     Plaintiff is entitled to recover unpaid overtime, an additional amount in liquidated damages equal to unpaid wages and overtime, costs, reasonable attorney's fees, and pre-as well as post-judgment interest. N.Y. Lab. Law §198(1-a), 663(1).

## THIRD CLAIM FOR RELIEF

### Unpaid Wages in Violation of New York Labor Law

98.     Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

99.     NYLL § 193 forbids deductions from an employee's wages without their consent unless such deductions are allowed or required by law.

100.    NYLL § 191 provides that wages "shall be paid in accordance with the agreed terms of employment," between employee and employer.

101.    NYLL further mandates that an employee is entitled to recover the full sum of wages owed, not just the statutory minimum wage for hours worked. N.Y. Lab. Law § 198(3).

102.    Between March 2018 and Plaintiff's termination in September 2019, Defendants failed to pay Plaintiff at his promised wage, in violation of New York Labor Law §§ 191 and 193.

103.    Defendants' deductions and failure to pay Mr. Mejia at the agreed upon rate was willful.

104.    Plaintiff is entitled to recover unpaid wages, an additional amount in liquidated damages equal to his unpaid wages, costs, reasonable attorney's fees, and pre-as well as post-judgment interest. N.Y. Lab. Law §198(1-a).

### FOURTH CLAIM FOR RELIEF

### Failure to Provide Statements Required by New York Labor Law

105.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

106.    Defendants failed to provide Plaintiff with wage statements which included the actual hours Plaintiff worked over forty and the overtime rate as required by NYLL § 195(3).

107.    Due to Defendant's violation of § 195(3) and underpayment of wages, Plaintiff is entitled to recover damages of $250 for each workday that the violations occurred or continued to occur, up to a maximum of $5,000, plus costs, reasonable attorney's fees, and any other relief that the Court in its discretion deems appropriate.

### FIFTH CLAIM FOR RELIEF

### Race Discrimination in violation of the New York City Human Rights Law

108.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

109.    Defendants are employers and employed Plaintiff within the meaning of the NYCHRL. N.Y.C. Admin § 8-107

110.    The NYCHRL forbids discrimination in the terms, conditions, or privileges of employment on the basis of an employee's race. N.Y.C. Admin. § 8-107(1).

111.    Defendants discriminated against Plaintiff because of his race by subjecting him to racial slurs in response to his request for a raise and by making other racist remarks in his presence.

112.    Plaintiff is entitled to compensatory damages, and at the Court's discretion, reasonable attorney's fees and costs. N.Y.C. Admin § 8-502.

113.    Defendants' discriminatory conduct was willful and malicious. As such Plaintiff is entitled to punitive damages. N.Y.C. Admin § 8-502.

## SIXTH CLAIM FOR RELIEF

### Disability Discrimination in violation of the New York City Human Rights Law

114.    Defendants are employers and employed Plaintiff within the meaning of the NYCHRL.

115.    Upon his injury in July 2019, Plaintiff became disabled within the meaning of the NYCHRL. Defendants knew of Plaintiff's disability.

116.    The NYCHRL requires employers to engage employees in a cooperative dialogue regarding the availability of an accommodation, and to make such an accommodation that is possible and does not pose an undue hardship on an employer's business. N.Y.C. Admin. §8-107.

117.    Defendants refused to engage in a good faith cooperative dialogue with Plaintiff, and ultimately refused to provide Plaintiff a reasonable accommodation, though there were a variety of available reasonable accommodations which would have allowed Plaintiff to fulfill the essential requisites of his position. Defendants thus discriminated against Plaintiff in violation of the NYCHRL.

118.   Plaintiff is entitled to compensatory damages, and at the Court's discretion, reasonable attorney's fees and costs. N.Y.C. Admin § 8-502.

119.   Defendants' discriminatory conduct was willful and malicious. As such Plaintiff is entitled to punitive damages. N.Y.C. Admin § 8-502.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)   Award Plaintiff damages for unpaid overtime due under the FLSA and an additional equal amount as liquidated damages because of Defendants' willful failure to pay overtime wages for hours worked beyond forty hours in a single work week, pursuant to 29 U.S.C. § 207(a);

(b)   Award Plaintiff damages for unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 663(1);

(c)   Award Plaintiff damages for unpaid wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 198(a-1);

(d)   Award Plaintiff $5,000 for Defendant's failure to provide wage statements in violation of NYLL §195(3);

(e)   Award Plaintiff compensatory damages for Defendants' race and disability discrimination in violation of the New York City Human Rights Law pursuant to N.Y.C. Admin. § 8-502;

(f)   Award Plaintiff punitive damages for Defendants' willful and malicious violation of the New York City Human Rights Law pursuant to N.Y.C. Admin. § 8-502;

(g)   Award Plaintiff pre- and post-judgment interest;

(h)     Award Plaintiff the costs of this action together with reasonable attorney's fees pursuant to N.Y. Lab. Law § 663, 29 U.S.C. § 216(b), and N.Y.C. Admin. § 8-502; and

(i)     Grant such other and further relief as this Court deems necessary and proper.


**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.


Dated:  The Bronx, New York
          May 17, 2021

                                    Yours truly,

                                    S/ Chris Lamb
                                    BRONX LEGAL SERVICES
                                    Attorneys for Plaintiff
                                    349 E. 149th St., 10th Floor
                                    The Bronx, NY 10451
                                    (718) 928-3700

                     BY:     Chris Lamb
                             Director of Litigation
                             718-928-3723
                             clamb@lsnyc.org

                             Michael Diller
                             Law Graduate
                             347-592-2117
                             mdiller@lsnyc.org